## MACKAY TELEGRAPH–CABLE CO. et al. v. FORT WORTH NAT. BANK. (No. 6545.)

(Court of Civil Appeals of Texas. San Antonio. April 13, 1921.)

Banks and banking ⊜148(3)—Drawer of draft waiving identification of payee liable, though wrong person was paid.

A telegraph company issuing a draft or order, in effect waiving identification of the payee, by indorsement of its authorized agent that payee was identified by him, is liable to bank paying it, whether or not the person presenting it and indorsing it was the payee.

Appeal from Tarrant County Court; W. P. Walker, Judge.

Action by the Fort Worth National Bank against the Mackay Telegraph-Cable Company and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Alex W. Spence and Spence, Haven & Smithdeal, all of Dallas, for appellants.

Bryan, Stone & Wade, B. L. Agerton, and J. C. Hyer, all of Fort Worth, for appellee.

FLY, C. J. This is a suit by appellee against the Mackay Telegraph-Cable Company and Postal Telegraph Company to recover the sum of $400, in which it is alleged that appellants, in addition to transmitting messages by wire from place to place in the United States, maintain and carry on a money transfer department, said transfer being made by wire; that an order was issued by appellants to T. Lane Ward for $400, which was presented to and paid by appellee, but appellants refuse to pay the same. The cause was submitted to a jury on nine special issues, and on the answers thereto judgment was rendered against appellants, for $400.

The evidence showed that appellants were in the habit of placing on their drafts a statement that the payee was identified by the agent of appellants, that is, that presentation of the draft was sufficient identification. They had been in the habit of so identifying the payees of their drafts at the appellee bank. The agent, whose name on the draft identified the payee, was authorized by appellants to so identify him. The person who got the draft from appellants at Waco

was the same person who presented it at Fort Worth, and, relying upon the usual identification, appellee paid the draft.

Appellants seek to avoid payment of the draft, because they claim that the man was not entitled to receive the amount of the same. The evidence showed that a telegram had been received at Waco, Tex., from the mother of T. L. Ward, in Madison, Wis., and a man claiming to be T. L. Ward had presented himself at the office of appellants in Waco, and they issued the draft to him, which, upon being presented to their regular agent, who was temporarily in Fort Worth, she had satisfied herself of the fact that the draft had been issued and of the identity of the man who presented it to her, and had signed the usual words of identification on the draft, and on that identification appellee paid the draft, as it had been its custom to do. The agent of appellants, when she wrote her identification, expected it to be presented to appellee for payment.

There is no merit whatever in this appeal, and it is an effort to make a bank liable for the acts of appellants in allowing themselves either to be victimized by a criminal or in the denial of the genuine signature of the man, T. L. Ward. They, through being deceived or through negligence, identified the man as Ward, and they, and not the bank, must make good the loss arising from the forgery, if there was one.

Mrs. High, the accredited agent of appellants, admitted that she signed the identification on the draft, and said that—

"she put her signature on the draft for the purpose of indicating to the bank that she had satisfied herself as to the identity of the man."

The bank had paid drafts with her signature on them before this transaction. She was authorized to identify payees in drafts, in the manner in which she did. Her signature made the draft payable to any man claiming to be Ward. There is no testimony tending to show that T. L. Ward identified by Mrs. High was not the man who got the money from appellee. There was no evidence tending to show that the indorsement was not made by the man identified by the agent of appellants. No matter if that man was not the man to whom the draft was made payable, appellants were responsible for identifying him as the man, and appellee should not suffer through their negligence.

An affidavit of forgery of the indorsement by the payee of the draft was filed by appellants, which, in case of an ordinary written negotiable instrument, would place the burden on the assignee or indorsee to show the genuineness of the indorsement, but in this case the identification was of the person who presented the draft, and appellee was not called upon to go any further into an identification. Where a bank pays a check, the burden is on it to prove that it was to the person named in the check, or that the drawer of the check was guilty of negligence precluding him from recovery for payment to the wrong person. Negligence was shown in this case, and all the facts point to the conclusion that the check was paid to the person identified by Mrs. High. No effort was made to safeguard any bank against a forgery. The payee was not required to write his name on the draft so that there might be a comparison of signatures.

As said in the case of Danvers Bank v. Salem Bank, 151 Mass. 280, 24 N. E. 44, 21 Am. St. Rep. 450:

"In the usual course of business, if a check purporting to be signed by one of its depositors is paid by a bank to one who, finding it in circulation or receiving it from the payee by indorsement, took it in good faith for value, the money cannot be recovered back on the discovery that the check is a forgery. It is presumed that the bank knows the signature of its own customers, and therefore is not entitled to the benefit of the rule which in cases of forgery permits a party to recover back money paid under a mistake of fact as to the character of the instrument by which the fraud has been effected. This presumption is conclusive only when the party receiving the money has in no way contributed to the success of the fraud or the mistake of fact under which the payment has been made. * * * Where a loss which must be borne by one of two parties alike innocent of the forgery can be traced to the neglect or fault of either, it is reasonable that it should be borne by him, even if innocent of any intentional fraud, through whose means it has succeeded."

Equity and good conscience estop appellants from setting up forgery on the part of the person who indorsed the draft, when it was through their mode of identification that the forgery accomplished its ends.

The judgment is affirmed.